## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **vs.** | ) | **DOCKET NO. 2:21-cr-67-JAW** |
| | ) | |
| **ANDREW HAZELTON** | ) | |

### DEFENSE SENTENCING MEMORANDUM

Andrew Hazelton is scheduled for sentencing on January 28, 2022 at 10 a.m. by video. He will appear from the Cumberland County Jail. We ask the court to impose a variant sentence of two years incarceration, followed by five years of supervised release with the special conditions recommended in the PSR, and the required $100 felony assessment.

**Andrew Hazelton**

Andrew is a college graduate, age 28, who developed a drug addiction, downloaded child pornography and has since gained sobriety, engaged in treatment and matured. Andrew grew up in a solid middle class family in Westford, MA. His sister, who is two years younger, has been disabled since birth. She is nonverbal and requires full-time support. While his parents have done their best, her condition has been a dominant force in the family's activities and daily life.

Although bright, Andrew was bullied in middle school. He was overweight and

socially awkward, which led to his being picked on. This made going to school each day anxiety-inducing for him. Over time, Andrew's self-esteem plummeted, and he has suffered lasting anxiety from his early years. When he graduated from high school, he chose a college in Ohio because he wanted to be near his high school girlfriend. Unfortunately, once they got to college, she decided their high school romance was best left behind and she broke up with Andrew.  Feeling rejected and alone in Ohio with no friends, in a single dorm room with no roommate and no specific academic focus, Andrew began to drink excessively and use drugs. He transferred to U. Mass Lowell to be closer to home, but his drug use problem had become an addiction. He left college just shy of getting a degree and entered drug rehabilitation at the New England Recovery Center for opiate addiction.  Following his two months of rehab, he moved to Providence Place – a sober house in Portland, Maine – and continued his treatment under the direction of Dr. Billotti at Co-Recovery.

**Andrew Explains His Emotional Trauma**

"The college break-up crippled me emotionally and was the start of my self-destructive behavior and substance abuse. I consider it the fork in the road event where I went down the wrong path. Also, this is the main reason I have trust issues, and was the start of seeing myself as a failure. I now see that I needed counseling and needed to work through the issues.  I understand people have break-ups all the time.  For me the problem was I did not see it coming and I did not get any help to deal with it and I let it undermine me. I began a years long party lifestyle through college, which ended with me getting addicted to heroin and cocaine. This period was around 2.5 years of pain and

suffering through the results of my addiction and failure to seek help. I cared about nothing except getting my fix and stop being in withdrawal. The countless days and nights of being in withdrawal agony seems to have dulled me emotionally and led to mental blocks around the memories and emotions. Most of my friends stopped talking to me, and that was never fixed. This situation that I am in now has fully severed any social connections I had left. I am very alone and scared about going to prison and will be the next series of traumas that I will be facing."

**Mental Health and Addiction**

"lt was devastating to watch Andrew start to change as his mental health problems and drug addiction took hold. He became a different person. The sunny side of him seemed to disappear.  He became quieter, cared less about his appearance, and really seemed to care very little about anything." Exhibit 1, letter of his Aunt. Dr. Billotti diagnosed Andrew with bipolar disorder along with his anxiety, depression and addiction. PSR ¶ 43. His father explains;

> [H]e pursued his sobriety with a similar zeal to his other interests, although he did not succeed to the same degree. As I'm sure you are aware from other documents with this case, he became addicted to fentanyl. To his credit, he came on his own to his mother and I for help. He went through detox, and saw individuals who were there for their second, third or fourth time. He knew that he needed more and went to rehab for six weeks. He then knew his triggers and that he could not return to his old stomping grounds and moved to Portland. He found a psychiatrist who could get him the therapy and the meds that he needed. He knew that he needed support, so he resided in sober housing

3

for another six months, moving to progressively less strict homes as he gained
confidence. He brought me to an AA meeting, and was very proud of his
tokens of ever increasing length of sobriety.

Defense Exhibit 1, letter of Father.


Andrew is currently taking multiple medications to address his mental health
including Lithium twice a day. *Id.* Lithium treatment remains the "gold standard" of
treatment for preventing recurrences in bipolar disorder. Tondo, L., Alda, M., Bauer, M. et
al. *Clinical use of lithium salts: guide for users and prescribers*. Int J Bipolar Disord 7, 16
(2019).[1] Experience shows those who respond to treatment with lithium have the correct
diagnosis of bipolar. The lithium is taken in combination with seroquel which complements
the lithium to address the serious manic depressive cycle of bipolar disorder. PSR ¶ 43.
Andrew   also receives Prozac and Trileptal for his anxiety, depression and mood
stabilization. *Id.* These are significant medications, prescribed by his treating physician since
the offense conduct. Andrew continues to receive these medications at the jail. Our system
punishes misconduct while recognizing that mental health problems that contribute to that
misconduct are often a mitigating factor in punishment. PSR ¶¶ 43, 45, 69A.  Andrew is on
different medication since the offense conduct.  He did well while on bail, living with his
father and attending treatment via video. Post plea, he was allowed to remain on bail while
he attended additional treatment following which he self-surrendered as agreed. He

---

[1] https://doi.org/10.1186/s40345-019-0151-2

demonstrated his ability to follow strict rules of supervison, a positive factor for his future term of supervised release. PSR ¶ 69.

In a lengthy letter to the court, his father concludes;

> First, he is a generally considerate person who, with normal social interaction and appropriate mental health care, will do very well and be productive in society. Second, he understands that he needs a support network and will take advantage of one. Third, while I understand that there needs to be a penalty for crime, incarceration is about the last thing that Andrew needs – it's effectively an enforcement of the very conditions that were detrimental to him in the first place. I understand that the federal system is rather inflexible, but I would encourage sentencing that is lighter on incarceration and heavier on remedial treatment, integration to society and positive lifestyle choices.

Defense Exhibit 1, letter of Father.

**Guideline 2G2.2 and the U.S.S.C.**

The Sentencing Commission has repeatedly studied the non-production child pornography guidelines applicable in this case. In 2012, the Commission issued a report concluding that guideline 2G2.2 does not work as intended and a revision is needed.[2] Specifically, the Commission found;

> [A]s a result of recent changes in the computer and Internet technologies that

---

[2]https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses

typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability. Non-production child pornography offenses have become almost exclusively Internet-enabled crimes; the typical offender today uses modern Internet-based technologies such as peer-to-peer ("P2P") file-sharing programs that were just emerging only a decade ago and that now facilitate large collections of child pornography. The typical offender's collection not only has grown in volume but also contains a wide variety of graphic sexual images (including images of very young victims), which are now readily available on the Internet. As a result, four of the of six sentencing enhancements in §2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in §2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.

U.S.S.C. Report to Congress, pp. 18-19.

The same analysis and concern is demonstrated in the Commission's June 29, 2021 report[3] on non-production child pornography offenses. The report notes "judges have continued to sentence most non-production child pornography offenders below their

---

[3]https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses

guideline ranges, most often by imposing variances pursuant to 18 U.S.C. § 3553(a). *Id.*, p. 9.  In fiscal year 2019, less than one-third (30.0%) of non-production child pornography offenders received a sentence within the guideline range. *Id.*, p. 5. The majority of offenders (59%) received downward variances. *Id.*

**The 13 Levels that Almost Always Apply**

The 13 level increase discussed by the Commission is present in this case. PSR ¶¶ 18-21. These increases are present in almost every case, making enhancements indistinguishable from base offense level and failing to reflect culpability. In this case there are 14 images and 108 videos, modest in terms of internet files, but calculated as 8,114 images due to the 75 to 1 video calculation.[4] This number adds 5 levels. There is a single image identified as "S & M," yet that image alone adds a 4 level increase. ¶ 19. Two levels are added for use of an app on his phone (the equivalent of use of a computer.) Yet, every child pornography case includes use of a computer, a phone and/or the internet. Two levels are added for images of pre-pubesent children when such images are in every child pornography case. When the unwarranted 13 level increase is removed, the total offense level is 15. At a 15/I - Andrew has no criminal history - the advisory range is 18 to 24 months.

---

[4] §2G2.2 application note 6(B)(ii) each video shall be considered to have 75 images. There is a strong argument this note is not entitled to deference, *Kisor v. Wilke*, 139 S.Ct. 2400, 2414-2415 (2019)(adopting "genuinely ambiguous" test for agency deference) effectively modifying the holding of *Stinson v. United States*, 508 U.S. 36, 44 (1993)(guideline commentary is agency interpretation). See *United States v. Nasir*, 17 F.4th 459, 469 (3d Cir., 2021)(recent analysis of Guideline Commentary).

**Low Recidivism Risk**

The Commission also finds recidivism by non-production offenders is far lower than for those convicted of other crimes - 28% compared to 50% in round numbers. In 2013, the Commission undertook a comprehensive, multi-year study of the recidivism of federal offenders. The first reports from that study, Recidivism Among Federal Offenders: A Comprehensive Overview, examined the recidivism of 25,431 federal offenders released from prison or placed on probation in 2005. The Commission found that almost half (49.3%) of federal offenders released to the community in 2005 were rearrested over an eight-year period.[5] The new September 2021 report updates earlier findings. *Id.* p. 3 (Tracking 32,135 offenders in the largest recidivism study by the Commission to date.). The overall recidivism rate remained the same, roughly half (49.3%). *Id.* p. 4.

Recidivism (measured as re-arrest, not as a conviction) after a non-production child pornography conviction was 27.6% with sexual impropriety conduct limited to 4.3%. June 2021 Report, p. 65. Those convicted of non-production offenses are about half as likely to be re-arrested as the federal criminal population as a whole.  The June report concludes, Guideline 2G2.2 "no longer effectively differentiates among offenders in terms of either the seriousness of the offense or culpability of the offender." *Id.* p. 69. "Judges have continued to sentence most non-production child pornography offenders below the guideline range,

---

[5] p. 2.
https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010

most often by imposing variances pursuant to their authority under 18 U.S.C. § 3553(a), but also increasingly at the request of the government. *Id.* The Commission's findings were recognized by this court a decade ago. "[The court] will then proceed to the § 3553(a) analysis, aware of the guideline sentence and the Court's view that the guideline sentence enhancements in § 2G2.2 are flawed because the calculation often results in "harsher than necessary" sentences. *U.S. v. Cameron*, 2011 WL 890502, at *6 (D.Me., 2011).

**Vulnerability in Prison**

Vulnerability in prison is recognized as a factor the court may consider in crafting an appropriate sentence. *Koon v. U.S.*, 518 U.S. 81 (1996) (police officers convicted of civil rights crimes); *U.S. v. Gonzalez*, 945 F.2d 525 (2d Cir. 1991) (departure affirmed for defendant who had "softness of features" which would make him prey to prisoners); *U.S. v. Lara*, 905 F.2d 599 (2d Cir. 1990) (departure for defendant whose youthful appearance and bisexuality made him particularly vulnerable to victimization); *U.S. v. Long*, 977 F.2d 1264 (8th Cir. 1992) (court departed from 46 months to one year home detention based on potential victimization in prison); *U.S. v. Parish*, 308 F.3d 1025 (9th Cir. 2002) (eight level departure granted in child pornography case in part because defendant had "high susceptibility to abuse in prison" due to his demeanor, his naiveté, and the nature of the offense); *U.S. v. Wilke*, 995 F. Supp. 828 (N.D. Ill. 1998) (downward departure based on appearance and conviction of child pornography offense would subject him to physical abuse in prison); *United States v. Ruff*, 998 F. Supp. 1351, (M.D. Ala. 1998) (Ruff would be

especially vulnerable to sexual victimization in prison). Andrew is young, socially awkward, and has been bullied and a picked on for much of his life. While at the Cumberland County Jail he has been in protective custody the entire time. Andrew's physical vulnerability is one factor among others that support a non-Guideline sentence.

**Conclusion**

A host of factors, including Andrew's mental health, addiction, lack of criminal record, vulnerability and the outdated aspects of Guideline 2G2.2 coupled with his admission, acceptance, medication, treatment, family support once released, the need to register and special conditions of supervised release all combine to support a below range period of incarceration.

We ask the court to impose a sentence of two years incarceration followed by five years of supervised release with the special conditions recommended by probation in the PSR.

DATE: January 14, 2022                           /s/ *David Beneman*
                                                 David Beneman
                                                 Attorney for Andrew Hazelton

David Beneman
Federal Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070 ext. 101
David_Beneman@fd.org

## CERTIFICATE OF SERVICE

I, **David Beneman**, attorney for **Andrew Hazelton**, hereby certify that I have served, electronically, a copy of the **within "DEFENDANT'S SENTENCING MEMORANDUM"** upon **Craig Wolff**, Assistant United States Attorney, United States Attorney's Office, Portland, ME and all counsel of record via the ECF system.

/s/ *David Beneman*
David Beneman

DATE: January 14, 2022

CC: Andrew Hazelton

11